Submitted on briefs October 18, affirmed October 23, 1917.

## SINNOTT *v.* INTERSTATE CONTRACT CO.

(168 Pac. 81.)

**Contracts—Unambiguous Written Contract—Construction.**

1.   When a written contract is clear and unambiguous, there is no room for construction.

**Compromise and Settlement—Performance of Contract.**

2.   Where plaintiff contracted with the successor of his employer, releasing it from all claims, the company agreeing to employ plaintiff at a salary of $75 a month for at least a year, and to continue to employ him thereafter if his services were satisfactory, also agreeing

to pay plaintiff the aggregate sum of $2,000, the agreement specifying that it was on the understanding that if, at the expiration of the year's employment, or at any time thereafter, the employment should be terminated by action of either party, the company should pay plaintiff in full satisfaction of all claims under the contract a sum to be ascertained by deducting from the aggregate sum of $2,000 the amount paid or accrued as wages, plaintiff, having received the full $2,000 in monthly installments as wages, and having voluntarily quit the employment, was entitled to nothing more.

From Multnomah: ROBERT G. MORROW, Judge.

Action by E. W. Sinnott against the Interstate Contract Company, a corporation. From a judgment in favor of defendant, plaintiff appealed. Submitted on briefs under the proviso of Supreme Court Rule 18: 56 Or. 622 (117 Pac. xi). Affirmed.

. In Banc.    Statement by MR. JUSTICE McCAMANT.

It appears that on March 30, 1911, while in the employ of a partnership to whose business the defendant has succeeded, plaintiff sustained a personal injury. He contended that his employers were liable for the damages sustained by him and they disputed this contention. The matter was adjusted by a verbal agreement whereby defendant, as the successor to the business, paid plaintiff some $90, assumed his medical and hospital expenses and agreed to pay the further sum of $2,000, all in consideration of a full release.

Subsequently and on July 1, 1911, the parties entered into a written agreement reciting the foregoing facts. The agreement then provides:

. "WHEREAS, It is now deemed of advantage to both of said parties that a contract of employment by said Company of said Sinnott be entered into and that said former agreement be altered so as to incorporate therein this agreement of employment and to show the further agreement that the said $2,000.00 shall be paid, not in the manner above named, but that for a period of at least one year from date hereof the monthly wage paid. said Sinnott by said Company

for said employment shall be credited upon said obligation of said Company to said Sinnott of $2,000.00 and that upon the termination of said employment as herein provided the balance then unpaid of said $2,000.00 shall be due and payable to said Sinnott; the intention being that the measure of compensation for said injury shall remain the amount as heretofore agreed but that the manner of payment shall be altered and there shall be added to said former agreement the agreement of employment aforesaid.

"Now, THEREFORE, In consideration of the premises and of the mutual promises and agreements of the parties hereto hereinafter contained, the parties hereto agree with each other as follows:

"First.   The said Company agrees that it will assume and pay all medical and hospital expenses to date incurred because of or arising out of said injury as per bills rendered and approved by said Company, and that it will not make any claim or demand upon said Sinnott for said sum of $90.00 or any part thereof heretofore paid by said Company to said Sinnott or for his benefit, and that said Company will in addition thereto pay to said Sinnott the aggregate sum of $2,000.00 at the times and in the manner as hereinafter set out.

"Second.   Said company agrees to continue to employ said Sinnott in such of the work or business of said Company as in the judgment of the officers thereof he can be of most service, for a compensation of $65.00 per month to date hereof and of $75.00 per calendar month hereafter during the remainder of the life of this contract, said employment to continue for a period of one year from date hereof, and, if during said year said Sinnott shall have discharged his said duties in a satisfactory manner, then the Company shall continue to employ him as long as said Sinnott shall perform his duties faithfully and in a manner satisfactory to the Company, otherwise the Company shall be under no obligation to keep him in its employ after the expiration of said contract of one year, provided, however, and this agreement is upon this ex-

press understanding that, if at the expiration of said
year or at any time thereafter said employment shall
be terminated by action of either party, then said
Company shall pay to said Sinnott in full satisfaction
of all claims under this contract a sum to be ascertained
by deducting from the said agreed sum of $2,000.00
the amount theretofore paid or accrued as wages under
this agreement.

"Third. It is agreed between the parties that the
Company shall at its own expense provide board and
lodging for said Sinnott only during such time as he
shall be actually performing work for the Company,
but during such time as he shall not be engaged in the
Company's work he shall board and lodge himself at
his own expense, it being understood that, while the
Company binds itself to pay said Sinnott during the
life of this contract a monthly compensation of $75.00
for each calendar month, it does not bind itself to keep
said Sinnott constantly at work, but may avail itself
of his services or not at its option as it may deem the
best good of the Company requires."

The fourth paragraph releases defendant and its
predecessors from all claims which plaintiff might
otherwise have asserted against them and the fifth
paragraph obligates plaintiff to render faithful service
so long as he is in defendant's employ.

Pursuant to this contract plaintiff remained in de-
fendant's employ from July 1, 1911, to April 22, 1914,
at which date he voluntarily quit. During the period
of his employment defendant paid him the sum of $75
a month, the moneys so paid aggregating in excess of
$2,000. Plaintiff claims that $900 only of the
amount so paid him should be credited on his claim
for $2,000 and on the disallowance of this claim
by the defendant he brought this action. The con-
troversy has to do wholly with the construction of
the above contract. The case was tried by the lower
court without the intervention of a jury. The court

found the facts as above stated and set forth the contract of July 1, 1911, in the findings.  The legal conclusion was that plaintiff was entitled to nothing further from the defendant and judgment was rendered accordingly.  Plaintiff appeals.          AFFIRMED.

For appellant there was a brief over the name of *Messrs. Logan & Smith.*

For respondent there was a brief over the name of *Messrs. Asher & Johnstone.*

MR. JUSTICE MCCAMANT delivered the opinion of the court.

1, 2.  The sole question presented by this appeal is whether the findings support the judgment of the lower court.  The briefs discuss the distinction between entire and severable contracts and that between penalties and liquidated damages.  We do not find it necessary to discuss these legal principles.  When a written contract is clear and unambiguous there is no room for construction.  We can see no escape from the conclusions reached by the lower court in the interpretation of this contract.

Plaintiff releases defendant and its predecessors from all claims which he might otherwise have asserted growing out of his personal injury and plaintiff agrees to perform to the best of his ability such work as may be assigned to him by the defendant.

Defendant waives any claim to reimbursement for the $90 which it had paid plaintiff and assumes the payment of his medical and hospital expenses.  Defendant further agrees that it will employ plaintiff at a salary of $75 a month for at least a year and "if during said year said Sinnott shall have discharged his

said duties in a satisfactory manner, then the company shall continue to employ him as long as said Sinnott shall perform his duties faithfully and in a manner satisfactory to the company." Plaintiff's injury had necessitated the amputation of the fingers of both hands. The agreement suggests a doubt on the part of the defendant as to whether plaintiff could render service of value to it and a desire on plaintiff's part to demonstrate that notwithstanding his injury he still was of economic value in the world. The defendant bound itself to give him permanent employment if he should render satisfactory service.

The agreement of the defendant for the payment of the $2,000 is couched in the following language, found in the first and second paragraphs of the contract:

"Said Company will in addition thereto pay to said Sinnott the aggregate sum of $2,000.00 at the times and in the manner as hereinafter set out. * *

"This agreement is upon this express understanding that, if at the expiration of said year or at any time thereafter said employment shall be terminated by action of either party, then said Company shall pay to said Sinnott in full satisfaction of all claims under this contract a sum to be ascertained by deducting from the said agreed sum of $2,000.00 the amount theretofore paid or accrued as wages under this agreement."

This language is perfectly clear. Plaintiff having received the full $2,000 in monthly installments, by the terms of his own contract was entitled to nothing more.

If defendant had discharged plaintiff while the latter was rendering satisfactory service, defendant would have been answerable to an action for damages. When plaintiff abandoned the employment of his own volition after receipt of the entire $2,000 stipulated for, his rights under the contract were at an end.

The judgment is affirmed.       AFFIRMED.